**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Hudson 1701/1706 LLC,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 25-11853 (KBO)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 22, 2026 at 9:30 a.m.<br>(Requested)**<br><br>**Objection Deadline: May 19, 2026 at 4:00 p.m.<br>(Requested)** |

**MOTION OF 356W58 GROUND LESSOR LLC TO CERTIFY DIRECT APPEAL TO
THE COURT OF APPEALS UNDER 28 U.S.C. § 158(d)**

356W58 Ground Lessor LLC ("Landlord"), through its undersigned counsel, files this

Motion (the "Motion") for entry of an order certifying a direct appeal to the court of appeals

pursuant to 28 U.S.C. § 158(d) of this Court's *Order Granting Debtors' Motion for an Order*

*Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property*

*Under Section 365 of the Bankruptcy Code* [Docket No. 443] (the "Order" attached as **Exhibit A**)

and in support hereof respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The Court should certify Landlord's appeal of the Order directly to the Third

Circuit.  The Third Circuit has not adopted (or even tacitly endorsed) a governing standard on the

threshold question of what constitutes a residential real property lease for purposes of section 365

of the Bankruptcy Code. Nonetheless, the Court employed a hybrid legal test to find that the at-

issue property—a stalled construction site subject to a Ground Lease that may or may not one day

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Hudson 1701/1706, LLC (0281) and Hudson 1702, LLC (0190). The Debtors' headquarters and the mailing address for the Debtors is 11440 San Vicente Boulevard, 2nd Floor, Los Angeles, CA 90045.

1

become a multifamily residential property—is a residential real property for purposes of section 365 of the Bankruptcy Code. Moreover, that decision constituted an advisory opinion because no justiciable controversy existed at the time.

2.      Direct certification to the Third Circuit pursuant to 28 U.S.C. § 158(d)(2), is required when the moving party can establish any one of four enumerated factors.  In this case, it is undisputed that the test to determine whether a lease should be considered non-residential or residential under section 365 of the Bankruptcy Code involves a question of law as to which there is no controlling decision of the Third Circuit or of the Supreme Court of the United States. Further, the resolution of this issue by the Third Circuit in a timely manner will materially advance the progress of these chapter 11 cases.  As such, the Court should grant the Motion and certify the appeal and questions presented thereby directly to the Third Circuit Court of Appeals.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over these cases under 28 U.S.C. § 1334. This Court is authorized to hear and determine the Motion under 28 U.S.C. § 157(a)-(b), and the amended standing order of reference issued by the United States District Court for the District of Delaware dated February 29, 2012. Venue of the cases is proper in this District under 28 U.S.C. § 1408(1). Pursuant to Local Rule 9013-1(f), the Landlord consents to the entry of a final order or judgment by the Court in connection with the Motion to the extent it is later determined that the Court, absent

2

consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

**A. Relationship Between Debtors and 356W58**

4.      On May 4, 2022, Hudson 1701/1706, LLC and Hudson 1702, LLC (collectively, the "Debtors"), as tenants, and 356W58 Ground Lessor LLC, as landlord, entered into a lease for certain premises located at 353 West 57th Street in New York, New York for a period of 99 years (as amended, the "Ground Lease").

5.      The premises covered by the Ground Lease was converted into the historic Henry Hudson Hotel in 1941, later renamed "The Hudson" by renowned hotelier Ian Schrager.  Amended and Restated Decl. of Alan Tantleff in Support of Debtors' Chapter 11 Petitions and First Day Motions at ¶¶ 18-19.

6.      Pursuant to a nuance in New York City housing law, occupants of hotel rooms at the Hudson became "Permanent tenants" of the property for life under New York City's Rent Stabilization Code. These SRO[2] tenants, which are the product of the leased premises' existence as a hotel, may not be evicted except via a warrant of eviction or other order of a court of competent jurisdiction or a governmental vacate order.

7.      To date, the entire leased premises remain classified as non-residential space by the New York City Department of Finance. *See* Objection at ¶ 12.

8.      Under the Ground Lease, the Debtors were obligated to construct and complete an agreed upon project at the premises (the "Construction Project").  The Construction Project as

---

[2] The term "SRO" refers to "single room occupancy."  These are typically one room spaces with limited kitchenette areas.  Bathroom facilities are provided down a hallway and are shared with other SRO occupants.

initially conceived was the conversion of the leased premises from a hotel into approximately 400 residential units to be rented at market rates.  To date, that project remains unfinished and the leased premises remain non-residential spaces. *Id*.

9.    The Debtors were required to substantially complete the initial project on or before May 4, 2024.  *See Ground Lease* at 86 (§ 21(d)), 149 (definition of "Required Substantial Completion Date"), 152 (§ 6(b)), 153 (§ 10(a)).

10.    The Ground Lease allowed for the possibility that the Debtors would not be able to complete the project on or before the May 4, 2024 deadline.  In that event, Section 48 of the Ground Lease obligated the Debtors to formulate and submit a Fallback Business Plan and pursue a Fallback Project.  *See id*. at 121-123 (§ 48).

11.    Before commencing certain construction on the project, the Debtors were required by law to obtain a Certificate of No Harassment from the New York City Department of Housing Preservation and Development ("HPD") verifying that no tenant harassment occurred at the property during a prescribed look-back period, or an exemption therefrom (the "CONH Requirement").  *Id*. at § 49.  Following receipt of certain HPD notices dated July 1, 2022 and September 25, 2023, it became apparent that the Debtors could not satisfy the CONH Requirement. *See id*. at 86 (§ 21(d)).  As a result, pursuant to the terms of the Ground Lease, the Debtors proposed two Fallback Business Plans, which Landlord could approve or deny in its sole and absolute discretion.  One of the proposed Fallback Business Plans involves transforming a portion of the premises into an extended-stay hotel (an entirely commercial building).

12.    To date, the leased premises remain under construction with no definitive long-term purpose on the horizon, and no active Fallback Business Plan has been proposed or approved.

4

**B. The Chapter 11 Cases**

13.    On October 22, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are authorized to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

14.    On November 25, 2025, the Office of the United States Trustee for the District of Delaware appointed the Official Committee of Unsecured Creditors (the "Committee") in these chapter 11 cases. The Committee is comprised of three members, including Landlord.

15.    On February 24, 2026, the Debtors filed the *Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [Docket No. 344] (the "365 Motion").

16.    On March 5, 2026, Landlord filed *356W58 Ground Lessor LLC's Objection to Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [Docket No. 354] (the "Objection").

17.    On March 9, 2026, the Debtors filed the *Debtors' Reply to 356W56 Ground Lessor LLC's Objection to Debtors' Motion for an Order Determining that Purported Ground Lease, if a True Lease, is a Lease of Residential Real Property Under Section 365 of the Bankruptcy Code* [Docket No. 359].

18.    On March 12, 2026 and April 21, 2026, the Court held hearings on the 365 Motion and Objection.

5

19.     On April 22, 2026, the Court entered the Order granting the 365 Motion, determining that the Ground Lease was a lease of residential real property for purposes of section 365 of the Bankruptcy Code.

## QUESTION PRESENTED AND RELIEF REQUESTED

20.     Landlord's appeal of the Order raises two questions that each warrant direct review by the Third Circuit.

21.     *First*, whether the Bankruptcy Court erred by accepting the Debtors invitation to rule on the 365 Motion in the first instance, thereby issuing an unconstitutional advisory opinion.

22.     *Second*, whether this Court erred in granting the 365 Motion and defining the Ground Lease as a lease of residential real property when it is uncontested that the bulk of the premises remain a stalled construction site and the only residential tenants are the permanent SRO tenants (who are exceptional because they cannot be evicted from the property no matter the outcome of this bankruptcy).

23.     Landlord asks this Court to certify the Order for direct review by the Third Circuit.

## BASIS FOR RELIEF REQUESTED

24.     An appeal of an interlocutory order issued by a bankruptcy court may be heard directly by the court of appeals if the order is certified for direct appeal and the court of appeals accepts the appeal. 28 U.S.C. § 158(d)(2).

25.     28 U.S.C. § 158(d)(2) sets out four independent criteria, any single one of which is sufficient to garner direct review of an interlocutory order: (1) "the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States"; *or* (2) the order "involves a matter of public importance"; *or* (3) "the judgment, order, or decree involves a question of law requiring

resolution of conflicting decisions"; *or* (4) "an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken[.]" 28 U.S.C. § 158(d)(2)(A)(i)-(iii).

26.     28 U.S.C. § 158(d)(2) "allows a bankruptcy court, district court, BAP, or the parties acting jointly to certify a bankruptcy court's order to the court of appeals, which then has discretion to hear the matter. Unlike 28 U.S.C. §1292(b), which permits certification only when three enumerated factors suggesting importance are all present, 28 U.S.C. §158(d)(2) permits certification when any one of several such factors exists, a distinction that allows a broader range of interlocutory decisions to make their way to the courts of appeals." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1695-96 (2015).

27.     28 U.S.C. §158(d)(2) does not require that this Court find an appeal is meritorious; rather, it merely requires that any one of the four factors is present.  Indeed, "under § 158(d)(2)(B), the district court *must* make this certification if, either 'on its own motion or on the request of a party,' the court determines that any one of the circumstances specified in § 158(d)(2)(A)(i)-(iii) exist." *Vara v. FTX Trading LTD (In re FTX Trading LTD)*, No. 23-241 (CFC), 2023 U.S. Dist. LEXIS 93529, at *2 (D. Del. May 30, 2023) (emphasis in original).

28.     Landlord's appeal satisfies at least two of the statutory tests for direct certification: (i) there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States governing the treatment of a stalled construction site under section 365(d) and (ii) immediate appeal may materially advance the progress of the case. 28 U.S.C. § 158(d)(2)(A)(i). As such, this appeal should be certified for direct review.

**A. Landlord's Appeal Involves Legal Questions as to Which There is No Controlling Precedent.**

29.     This appeal raises the purely legal issue of whether a commercial lease between two sophisticated financial parties for an admittedly stalled construction project with no residents—other than permanent SRO tenants who remain unaffected by this bankruptcy[3]—can qualify as "residential real property" under 11 U.S.C. § 365(d)(2).

30. Bankruptcy Code Section 365(d)(2) reads:

> In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2).

31.     In contrast, section 365(d)(4) of the Bankruptcy Code requires a debtor to assume or reject "an unexpired lease of nonresidential real property" within, at maximum, 210 days of the bankruptcy petition date. *See* 11 U.S.C. § 365(d)(4).

32.     This Court (along the Debtors and Landlord) has acknowledged that there is no controlling authority in the Third Circuit regarding whether a lease in residential under section 365 of the Bankruptcy Code.[4]   Likewise, the Court acknowledged that there was no controlling authority directly on point because "the facts and circumstances presented are somewhat unique, as we discussed, from the existing case law because the building -- the property that is relevant is in its nascent stages of construction and because of the stop work orders, actual construction on the project is stalled[.]" April 21, 2026 Hr'g Tr. at 68:1-5 (the Court).

---

[3] April 21, 2026 Hr'g Tr. 31:19-22 (Q "As to the SRO tenants, it is true that they're not going anywhere unless they choose to or they pass away, right? A Correct.").

[4] Landlord is also unaware of any Court in the Third Circuit that has ever accepted a debtor's invitation to issue judgment on whether a lease is residential or non-residential prior to assumption of such a contract.

33.    To date, the Third Circuit has not established a test to determine if a lease of real property is residential or non-residential under section 365(d) of the Bankruptcy Code.  There are three potential tests that other courts have utilized to determine if a lease of real property is residential or non-residential: the Property Test, the Economic Test, or the Totality Test.  However, Landlord posits that whatever test is used, the determination must focus on the use of the real property *at the time of the determination*, not some speculative future use of the property.

34.    The Property Test looks at the use of the real property to determine if it "provide[s] homes for human beings." *In re Lippman*, 122 B.R. 206, 207, 212 (Bankr. S.D.N.Y. 1990).  The determination should be made as to the current use of the property to avoid "the practical effect of evicting" a person from his residence. *Id*. at 212-13.

35.    The Economic Test, in contrast, focuses on the debtor's use of the *lease* rather than the use of the real property.  *See In re Passage Midland Meadows Operations, LLC*, 578 B.R. at 378 (Bankr. S.D. W. Va. 2017) (rejecting the property test because "[a]ll would appear to agree in the cases applying the property test that the debtor lessees in question never had any intention of making the leased premises his, her or, its residence. And yet that salient fact is sidelined by the property test analysis in favor of focusing, instead, and in isolation, on the use to which unnamed, unknown nondebtor sublessees, perhaps far down the leasing chain, will put the property. And that remote use (*e.g.*, living in a dwelling) will not be the same use (*e.g.*, investment and income production) that the original leasing parties contemplated.").

36.    Finally, the Totality Test looks at a series of factors to determine if the property is residential. *In re Guardian Elder Care at Johnstown, LLC*, 665 B.R. 270, 277 (Bankr. W.D. Pa. 2024).  The factors concentrating on use of the property focus heavily on the current use of the

9

property and also presuppose there are tenants on the property: "the primary use of the property" and "the nature of occupancy by residents[.]" *Id.*

37.     Here, the unrefuted facts are that the property is currently a stalled construction site with no residents other than permanent SRO tenants who remain unaffected by this bankruptcy. April 21, 2026 Hr'g Tr. 38:5-7 ("Q Would it be fair to say that [the property is] a stalled construction project? A Yes, it would be fair to say."); *Id.* at 43:13-14, 46:9-13 ("The first [temporary certificate of occupancy], I believe, was 24 months from start of construction . . . and the start of construction has to await the completion of the cure agreement and the stop work order being lifted and the amended application with the DOB, correct? A Yes.").

38.     Regardless of what test the Third Circuit ultimately adopts, the focus should be limited to the current use of the property, not a hypothetical future use.  Moreover, given the absence of controlling case law (and the dearth of case law in the Third Circuit on this particular issue), the ultimate question of what constitutes the proper test of when a lease is residential or non-residential must be addressed directly by the Third Circuit.

**B.  Immediate Appeal May Materially Advance the Progress of the Case**

39.     When the Ground Lease is determined to be a lease of non-residential real property—which Landlord maintains is an accurate determination—then the Debtors must assume the Ground Lease by May 20, 2026 or it is automatically rejected.

40.     The imposition of a real deadline will force the Debtors—who thus far have languished in bankruptcy without any real progress—to make decisions about the trajectory of these cases.  The Debtors describe the Ground Lease as their "most significant asset" and treatment of the Ground Lease is crucial to the bankruptcy.  Mar. 12, 2026 Hr'g Tr. at 37:15-18 (Gordon).

10

If the Ground Lease is to be rejected, there is nothing left to reorganize and the case will inevitably resolve.

41.    If in the alternative, the Debtors determine that it is in the best interests of the estates to assume the Ground Lease, then this action will also materially advance the bankruptcy because it will bring about a productive discussion of curing the current breaches rather than the currently unproductive scorched earth litigation that the Debtors are pursuing.

42.    Either result will advance the case—which is currently on a path to nowhere—onto a path with a potential resolution and will materially advance the cases toward an exit from Chapter 11.

## CONCLUSION

43.    For the foregoing reasons, this Court should grant the Motion and certify the Order for direct appeal to the Third Circuit Court of Appeals.

Dated: May 5, 2026
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

*/s/ Matthew B. McGuire*
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
Katherine S. Dute (No. 6788)
Soumya P. Venkateswaran (No. 7278)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
Email: landis@lrclaw.com
      mcguire@lrclaw.com
      dute@lrclaw.com
      venkateswaran@lrclaw.com

– and –

**ADLER & STACHENFELD LLP**
Kirk L. Brett (admitted *pro hac vice*)
Patrick O'Connor (admitted *pro hac vice*)
555 Madison Avenue, 6th floor
New York, New York 10022
Telephone: (212)883-1700
Facsimile: (212)883-8883
Email: kbrett@adstach.com
      poconnor@adstach.com

*Counsel to 356W58 Ground Lessor LLC*

12